UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 17 2016
```

The Port Authority Police Benevolent Association,
Inc., and Kathleen Howard,

                             Plaintiffs,

              –v–

The Port Authority of New York and New Jersey
*et al.*,

                             Defendants.

15-CV-3526 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs the Por t Authority Police Benevolent Association, Inc., and Kathleen Howard
(together, "Plaintiffs") initiated this action by a filing a complaint on May 6, 2015.  Dkt. No. 1
("Comp."). Plaintiffs asserted a claim under 42 U.S.C. § 1983 against Defendants the Port
Authority of New York and New Jersey (the "Port Authority"), several named employees
thereof, and a number "John Does" (together, "Defendants"), alleging violations of the Fourth
Amendment in connection with Port Authority personnel's investigatory review of text messages
on the personal cell phones of several then-probationary Port Authority police officers.
Comp. ¶¶ 1-6, 69-75.  Before the Court is Plaintiffs' motion for leave to amend their complaint.
Plaintiffs seek to: (i) name two then-probationary Port Authority police officers as additional
plaintiffs; (ii) name three individual alleged Port Authority policymakers and supervisory
officials as new defendants; (iii) assert a new claim under the New Jersey Constitution; and (iv)
request certain declaratory relief.  Dkt. No. 78 ("Br.") at 1-2.  For the reasons articulated below,
Plaintiffs' motion is granted in part and denied in part.

1

## I.     Background

The investigation and text message review at the core of this action relate to an unofficial party held at the Texas Arizona Bar & Grill in Hoboken, New Jersey ("Texas Arizona") on August 23, 2014, which several dozen off-duty then-probationary Port Authority police officers ("PPOs") attended to celebrate their recent graduation from the Port Authority Police Academy. Comp. ¶ 2-5, 20-22; Br. at 3-4.  In response to reports of PPOs engaging in various forms of misconduct during the Texas Arizona party – including sexual assault of bar patrons, theft of alcohol, and destruction of private property – the Port Authority Office of Inspector General's Police Integrity Unit ("PIU") commenced an investigation that ultimately included interviews of individual PPOs conducted over the course of a seven-day period in September 2014. Br. at 3-5; Comp. at ¶¶21-27.  During the interview process, PIU personnel learned that many PPOs had communicated about the events at Texas Arizona via a mobile group messaging application called GroupMe.  Br. at 7; Comp. ¶¶ 34-36.  Following this revelation, PIU personnel, proceeding without a warrant, allegedly began to ask individual PPOs during interviews to provide access to the contents of GroupMe messages held on their personal cell phones and, in certain instances, took physical possession of individual PPOs' phones to facilitate review. Comp. at ¶¶ 34-57; Br. at 7-8.

Plaintiffs allege that such actions constitute unreasonable search and seizure in contravention of the Fourth Amendment to the United States Constitution.  The operative complaint asserts a single claim under 42 U.S.C. § 1983 and names as individual defendants, in addition to the Port Authority itself: (i) Michael Fedorko, the Port Authority's Superintendent of Police; (ii) Lieutenant Timothy McGovern, the Executive Officer of the PIU and head of the Texas Arizona investigation; (iii) Lieutenant Steven Adelhelm, a senior officer within the PIU; (iv) ten "John Does," who, together with Fedorko, were allegedly "policymakers" for the Port

2

Authority with final decision-making authority and responsibility for the decision to review the PPOs' text messages, Comp. ¶¶ 13, 60; and (v) ten additional "John Does," who allegedly were "superior officers" within the Port Authority, and, together with McGovern and Adelhelm, conducted all or part of the text message review at issue, Comp. at ¶¶ 14, 26, 34-41.

Among the operative complaint's factual allegations pertinent here are various "specific examples" of Defendants' allegedly "overbroad and unjustified searches" of the PPOs' text messages. All but of one of these examples refer to an individual purported search victim only with an anonymized letter designation (i.e., "Probationary Office A" through "Probationary Office G"). Comp. ¶¶ 45-56, 59. The complaint asserts that Probationary Officers A through G are not named "[o]ut of concern for retaliation" and that "[t]heir interests are represented in this suit by the [the Port Authority Police Benevolent Association ('PAPBA')]." *Id.* ¶ 59. The only alleged search victim specifically identified in the operative complaint is Howard – the sole named individual Plaintiff – a former PPO who, at the time of filing, had already been terminated allegedly for failure to cooperate during her interview with the PIU. Comp. ¶¶ 46-49.

Also of relevance, the complaint identifies – but does not name as defendants – a number of specific individuals who, on information and belief, had "responsibilities that bear on the decision to implement the unconstitutional searches or knew about them allowed them [sic] to persist." Comp. ¶ 61. Among those identified are two of the three individuals whom Plaintiffs now seek to join as defendants. *Id.*

On August 19, 2015, the Court referred this matter to United States Magistrate Judge Ronald L. Ellis for general pretrial supervision. Dkt. No. 15. Shortly thereafter, Judge Ellis endorsed a case management and scheduling order (the "Scheduling Order"), which, provided, among other things, for a September 21, 2015 deadline for motions to amend pleadings and/or

join additional parties, and for fact and expert discovery cutoffs of January 11, 2016 and February 25, 2016, respectively. Dkt. No. 17 at 2. After several apparent delays and adjournments, discovery substantially concluded on June 10, 2016. Dkt. No. 73.

Plaintiffs first advised Judge Ellis that they were considering an application to amend their complaint during a status teleconference held on April 4, 2016. Dkt. No. 65 at 18-19. Judge Ellis instructed the parties to meet and confer to try to resolve any proposed amendments by stipulation. *Id.* at 19. After the parties failed to reach agreement on several stipulations prepared by Plaintiffs, Dkt. No. 69-2, Plaintiffs filed a letter-motion to amend their complaint on April 29, 2016, the same day as the then-operative discovery cutoff, Dkt. No. 68. Judge Ellis subsequently advised the parties that this Court would resolve Plaintiffs' motion, given the potential for dispositive effect with regard to putative additional parties. Dkt. No. 75 at 4. The parties stipulated to a briefing schedule for the motion, and Plaintiffs filed their opening papers with this Court on June 3, 2016. Dkt. Nos. 77-79.

## II. Discussion

### A. Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2), "[a] court should freely give leave to amend when justice so requires." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted). Notwithstanding this liberal standard, district courts retain "discretion" to "grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). While "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (internal quotation marks omitted), leave may

denied for "good reason," such as "futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy*, 482 F.3d at 200.[1]

If, as here, a scheduling order has been entered that limits a party's ability to file an amended pleading, "the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 16(b)); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.").[2]  Whether good cause exists turns on the "diligence of the moving party." *Parker*, 204 F.3d at 340.  Specifically, "the movant must show that the deadlines cannot be reasonably met despite its diligence." *Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003).  In addition to diligence, the Court may "in the exercise of its discretion . . . consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

---

[1] To the extent that those portions of Plaintiffs' application seeking to name additional parties implicate the joinder provisions of Federal Rule of Civil Procedure 21, the Court notes that motions under Rule 21 are subject to "the same standard of liberality afforded to motions to amend pleadings." *LSSi Data Corp. v. Time Warner Cable, Inc.*, 11-cv-7780, 2012 WL 933078, at *5 (S.D.N.Y. Mar. 20, 2012). As with Rule 15, "the granting of leave [under Rule 21] is within the Court's discretion," and "the existence of prejudice would counsel against granting relief under either rule." *Sheldon v. PHH Corp.*, 96-cv-1666, 1997 WL 91280, at *3 (S.D.N.Y. Mar. 4, 1997), *aff'd*, 135 F.3d 848 (2d Cir. 1998). Accordingly, "nothing material turns on [the] distinction" between Rule 15 and Rule 21 when determining whether a pleading may be amended to add parties. *Id.*; *see also Corona v. Cty. of Suffolk*, C.A. No. 05-6016, 2008 WL 2371421, at *2 (E.D.N.Y. Jun. 9, 2008) ("The standard for leave to amend under Rule 21 is the same as that under Rule 15. . . .").

[2] If the operative scheduling order expressly governs joinder of new parties, then motions for joinder submitted after the applicable deadline are – like any belated motion to amend – subject to Rule 16(b)'s good cause requirement, notwithstanding Rule 21. *See, e.g., Otegbade v. N.Y.C. Admin. for Children Servs.*, 12-cv-6298, 2015 WL 851631, at *2 (S.D.N.Y. Feb. 27, 2015) (collecting cases).

Because "compliance with Rule 16 is a threshold matter [that] may obviate the Rule 15 analysis," the Court will first consider whether good cause exists under Rule 16(b) for Plaintiffs to amend their complaint and then, if so, whether leave to amend should nevertheless be denied based on any of the Rule 15(a) factors. *See Goureau v. Goureau*, 12-cv-6443, 2013 WL 1499404, at *2 (S.D.N.Y. Apr. 10, 2013); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 02-cv-1230, 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3 2006) ("The standards of Rule 16(b) must be met first and can not be short-circuited by an appeal to those of Rule 15(a).") (internal quotation marks and citation omitted).  Each set of proposed amendments is addressed in turn.

### B.    Plaintiffs Fail to Show Good Cause to Join Additional Plaintiffs

Plaintiffs first seek to name as additional plaintiffs Laura Bordonaro and Nicholas Doscher (the "Putative Plaintiffs"), two current Port Authority police officers who, as PPOs, were allegedly subjected to text message searches in connection with the investigation into the Texas Arizona incident.  Br. at 10, 14.  For the reasons that follow, this portion of Plaintiffs' application is denied.

Generally, as Defendants correctly note, "[a] party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (internal quotation marks and citation omitted); *see also Abdullah James George Wilson v. Corelogic Saferent, LLC*, 14-cv-2477, 2016 WL 482985, at *2 (S.D.N.Y. Feb. 8, 2016).  There is no dispute that Plaintiffs knew of the Putative Plaintiffs – and of the specific allegations giving rise to the claims they seek to assert – well before the September 21, 2015 deadline to amend pleadings.  Indeed, the alleged searches of both Putative Plaintiffs' text

6

messages are described in the operative complaint, with Putative Plaintiffs referred to as

"Probationary Officer E" and "Probationary Office G," respectively. Br. at 14; Comp. ¶¶ 54, 56.

The Putative Plaintiffs each explicitly consented to the inclusion of these allegations in the

operative complaint during the "first half of 2015." Dkt. Nos. 83-8 (Declaration of Laura

Bordonaro, dated June 22, 2016) ("Bordonaro Dec.") at 1; 83-9 (Declaration of Nicholas

Doscher, dated June 23, 2016) ("Doscher Dec.") at 1. Doscher, moreover, testified at deposition

to participating in multiple calls with Plaintiffs' counsel to discuss the alleged searches before

the operative complaint was filed. Dkt. No. 80-12 (Deposition of Nicholas Doscher, dated April

13, 2016) at 43-44.

Plaintiffs argue that good cause nevertheless exists because the Putative Plaintiffs, still

PPOs when the operative complaint was filed, lacked the job protections afforded to tenured

police officers and, as such, "feared retaliation by Defendants in their employment and were

reluctant to come forward as plaintiffs." Br. at 14; *see also* Dkt. No. 82 ("Reply Br.") at 7-8. In

response to Defendants' accurate observation that this argument as set forth in Plaintiffs' moving

papers lacked record support, Plaintiffs on reply submitted declarations from the Putative

Plaintiffs asserting that they indeed asked that their "name[s] not be included in the [original]

complaint" because they were "probationary police officer[s] and . . . feared retaliation from the

Port Authority if [they] participated in this lawsuit." *See* Bordonaro Dec. at 1; Doscher Dec. at

1.

Even considering and crediting this evidence submitted for the first time on reply,[3]

Plaintiffs' argument is unpersuasive. As the declarations themselves concede, both Putative

---

[3] Courts in this District have frequently declined to consider evidence first submitted on reply. *See, e.g.*, *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 07-cv-2352, 2007 WL 1098714, at *1 (S.D.N.Y. Apr. 12, 2007) (striking "evidence presented for the first time in reply" and declining to "consider it for purposes of ruling on the motion" because it is "improper to sandbag one's opponent by raising new matter in reply") (internal quotation marks

Plaintiffs' probationary periods concluded in August 2015. Bordonaro Dec. at 1; Doscher Dec. at 1. As such, any perceived risk of retaliation associated with probationary status was ameliorated, at the very latest, several weeks before the deadline to amend the complaint – and at least seven months before Plaintiffs first raised the possibility of proposed amendments before Judge Ellis. During that time, Plaintiffs did not request an extension of time to amend the complaint or otherwise advise Judge Ellis, this Court, or Defendants of the possibility that it would seek to add parties. The Court is aware of no evidence, moreover, that Plaintiffs or their counsel attempted to contact the Putative Plaintiffs during that time to discuss the possibility of joining the litigation. Accordingly, the Court cannot conclude based on the claimed fears of retaliation that the "applicable deadline could not have been reasonably met" – or at least the amendment pursued substantially earlier than it was – "despite [Plaintiffs] having exercised diligence." *See Sokol Holdings, Inc. v. BMD Munai, Inc.*, 05-cv-3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009); *see also McCarthy*, 482 F.3d at 201-02 (upholding denial of leave to amend where "Plaintiffs became aware of the need to consider a possible [additional] claim . . . more than seven months before moving to amend their complaint").

While not a point emphasized in Plaintiffs' briefs, the Putative Plaintiffs' declarations both note candidly that the Putative Plaintiffs had hoped "to put this entire incident behind [them]" and became interested in joining this litigation only after their April 2016 depositions.

---

omitted); *see also New Look Party Ltd. v. Louise Paris Ltd.*, 11-cv-6433, 2012 WL 251976, at *4 n.4 (S.D.N.Y. Jan. 11, 2012) (court was "disinclined to consider" evidence submitted with reply because "it was not submitted in response to any new issues raised by defendants in their opposition brief" but instead went "to the heart of plaintiff's contention and should have been submitted with its opening brief in order to give defendants an appropriate opportunity to respond"). Under certain circumstances, however, consideration of such evidence has been recognized as a valid exercise of a district court's discretion. *See, e.g., Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*, 215 F.3d 219, 227 (2d Cir. 2000) (district court did not abuse discretion in considering affidavits submitted with reply brief where, among other things, defendant: "did not move the district court for leave to file a sur-reply to respond to [the] new evidence"; "was not surprised by the affidavits in question"; and made "no claim that it ha[d] any contrary evidence to introduce even if it were given an opportunity to proffer it").

*See* Bordonaro Dec. at 2; Doscher Dec. at 2.  But Plaintiffs identify no authority – and the Court is aware of none – to support a finding that a would-be litigant's change-of-heart, without more, constitutes "good cause" to amend a complaint after the close of discovery.

Plaintiffs fail to show the requisite "good cause" under Rule 16(b) to amend the complaint to add the Putative Plaintiffs.  Having made that determination, the Court need not consider the proposed amendment under the Rule 15(a) factors.  *See, e.g., Otegbade*, 2015 WL 851631, at *4 (declining to reach Rule 15(a) factors because court "exercised its discretion to decide Plaintiff's application to amend under the 'good cause' standard of Rule 16(b)"); *see also Estate of Ratcliffe v. Pradera Realty Co.*, 05-cv-10272, 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007) ("while the absence of prejudice to a nonmoving party may be relevant to leave to amend under Rule 15(a), it does not fulfill the good cause requirement of Rule 16(b)") (internal quotation marks omitted).  Plaintiff's application to join the Putative Plaintiffs is denied.

### C.   Good Cause Exists to Name New Defendants

Plaintiffs also seek leave to name Karen Connelly, Steven Pasichow, and Michael Nestor (the "Putative Defendants") as individual defendants in place of several of the "John Does" included in the operative complaint as alleged "policymaking defendants."  It is undisputed that all three Putative Defendants were senior employees of the Port Authority during the Texas Arizona investigation and held some responsibility for overseeing the PIU, with Connelly serving as Assistant Director of the Office of Investigations, Pasichow as Director of the Office of Investigations, and Nestor as the Acting Inspector General.   Br. at 4; Dkt. Nos. 79-6 (Deposition of Karen Connelly, dated March 29, 2016) ("Connelly Dep.") at 33-37; 79-9 (Deposition of Steven Pasichow, dated March 31, 2016) ("Pasichow Dep.") at 18-21; 83-1 (Deposition of Timothy McGovern, dated June 8, 2016) ("McGovern Dep.") at 25-26.   Plaintiffs

contend that good cause exists for this proposed amendment because they did not learn until at least certain Putative Defendants' depositions – conducted during the final weeks of discovery and more than six months after the deadline to amend – that the Putative Defendants: (i) could arguably be deemed "policymakers" for purposes of attaching municipal liability to the Port Authority under *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978) and its progeny; and (ii) could be personally liable to Plaintiffs for authorizing or declining to stop the allegedly unconstitutional text message reviews. Br. at 15-16; Reply Br. at 4-7. Defendants' principal counterarguments sound largely in the Rule 15(a) factors: they contend that the addition of the Putative Defendants would be futile and, to a lesser extent, unduly prejudicial. Opp. Br. at 13-15.

    As an initial matter, the Court finds that Plaintiffs have shown good cause under Rule 16(b) for modifying the Scheduling Order to allow for the addition of the Putative Defendants. Courts have consistently recognized that if a party learns new facts through discovery that were unavailable prior to the applicable deadline and moves promptly to name new parties based on such facts, leave to amend is appropriate. *See, e.g.*, *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 413-14 (S.D.N.Y. 2008) (granting leave to name additional defendant whose unique status and relevant activities plaintiff learned only through document discovery and deposition of corporate designee); *Soroof Trading Dev. Co. Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012) (good cause existed to add defendant where plaintiff leaned facts during deposition discovery that were "both more varied and more detailed than those included in the original complaint" and went "to the heart" of plaintiff's claim against the putative defendant); *Morales v. Cty. of Suffolk*, 952 F. Supp. 2d 433, 435 (E.D.N.Y. 2013)

(granting leave to amend where plaintiff could not identify police officer involved in altercation until after a long-delayed deposition).

Here, assuming *arguendo* that the text message reviews were indeed unconstitutional, Plaintiffs adduced previously unknown facts about the Putative Defendants during the final stages of discovery that could potentially bear on the § 1983 liability of the Port Authority or the individual Putative Defendants themselves. It is well-settled that "actions by an individual with final decision-making authority in a municipality constitute official policy" for purposes of attaching liability to a municipal entity under § 1983. *Anthony v. City of N.Y.*, 339 F.3d 129, 139 (2d Cir. 2003) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)); *see also Monell*, 436 U.S. at 690-91 (municipal body may be directly liable for unconstitutional action that implements or executes "official policy"). "An official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." *Anthony*, 339 F.3d at 139 (internal quotation marks and citation omitted). It is also beyond cavil that individual supervisors may be personally liable under § 1983 if they were "personally involved" in a constitutional deprivation. *See, e.g.*, *Lloyd v. City of N.Y.*, 43 F. Supp. 3d 254, 266 (S.D.N.Y. 2014). In this Circuit, "personal involvement" may be established in one of several ways, including by showing that supervisory defendants, "after being informed of the violation through a report or appeal, failed to remedy the wrong." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Lloyd*, 43 F. Supp. 3d at 266 (recognizing that "*Colon* remains the standard for establishing personal involvement by supervisory officials" under § 1983, when, as here, discriminatory intent as not element of the relevant constitutional claim).

In light of these principles, facts obtained by the Plaintiffs during the last weeks of discovery provide a strong basis for belated joinder of the Putative Defendants. Pasichow, for

11

example, testified during his deposition in late March 2016 that as Director of the Office

Investigations he learned of the PIU's review of PPOs' text messages on the day that it began;

was aware of the purportedly coercive circumstances of the reviews; advised Nestor of the

review while it was ongoing; and did not instruct anyone to inform the PPOs of their right to

refuse the review or to make use of consent forms. Pasichow Dep. at 7-9, 40-41. Connelly

testified that she was specifically briefed on the text message review by lead investigator

McGovern and was "comfortable" with "the methods . . . they were using" to obtain access to the

messages, and that McGovern did not have "final" decision-making authority with respect to the

conduct of investigations but rather would have to "consult" with Connelly and Pasichow on

certain types of issues. Connelly Dep. at 34-35, 70-71. What is more, on May 27, 2016, in

response to an interrogatory served following these depositions, Defendants explicitly

acknowledged that, "depending on the circumstances, the final decision on the manner of

gathering evidence [in PIU investigations] would be Detective Lieutenant Timothy McGovern,

or his supervisor, Karen Connelly, or her supervisor, Steven Pasichow, or his supervisor,

Michael Nestor." Dkt. No. 79-24.

      The Court is satisfied, moreover, that Plaintiffs' failure to obtain these facts or move to

amend before the deadline is not attributable to a lack of diligence. Plaintiffs' counsel

represents – and Defendants do not dispute – that Defendants first produced documents in this

matter only ten days before the deadline to amend pleadings and, as a result of that and

subsequent delays in Defendants' productions of electronic documents, depositions did not

commence until November 2015, at least six weeks after the deadline had passed. Br. at 10.

Plaintiffs also served interrogatories well in advance of the applicable deadline established in the

Scheduling Order, inquiring, among other things, as to which Port Authority employees were

aware of the text message reviews as they were ongoing and which Port Authority employees were consulted on the decision to conduct the reviews. In response, Defendants provided purportedly exhaustive lists that did not include the Putative Defendants. Dkt. No. 79-25 at 2-6. [4]

The Court also notes that, after learning the new facts described above, Plaintiffs proceeded with dispatch. Plaintiffs raised the possibility of amendments and then filed a letter-motion with Judge Ellis within a month of Pasichow's and Connelly's depositions, and later filed moving papers with this Court just days after receiving Defendants' May 27 interrogatory response. Finally, the record also reflects that Plaintiffs attempted to obviate the need for motion practice on this issue by proposing multiple stipulations regarding lead investigator McGovern's final decision-making authority with respect to the text message review, or lack thereof – proposals which Defendants formally rejected on the then-operative April 29, 2016 discovery cutoff. Dkt. No. 80-18.

In view of the new facts obtained near the conclusion discovery and of Plaintiffs' evident diligence, good cause exists to amend the complaint to include the putative Defendants.

### 1.    Adding the Putative Defendants Would Not Unduly Prejudice Defendants

Notwithstanding Plaintiffs' diligence, the Court may deny this portion of the motion if it finds that adding the Putative Defendants at this stage of the litigation would unduly prejudice

---

[4] Defendants note in passing that both Connelly and Pasichow are referenced in the presently operative complaint. Opp. Br. at 11. That observation, while accurate, does not alter the Court's conclusion. The operative complaint includes Connelly and Pasichow on a list of nearly twenty individuals whom Plaintiffs asserted, on information and belief, "have responsibilities that bear on the decision to implement the unconstitutional searches or knew about them and allowed them to persist." Comp. ¶ 61. No other allegations concerning any of the Putative Defendants are set forth in the complaint, and the Court does not view Connelly's and Pasichow's appearance on a list, without more, as a basis to find that Plaintiffs exhibited a lack of diligence by failing to seek to join them earlier. *See Soroof Trading*, 283 F.R.D. at 148-49 (no lack of diligence where plaintiff had included relevant factual allegations about the putative defendant in its original complaint but such allegations could not, standing alone, support a viable claim); *Bridgeport Music*, 248 F.R.D. at 413-14 (even if constructively aware of putative defendant's potential relevance early in the litigation, plaintiff "reasonably waited until it could inquire further into the extent" of the putative defendant's relevant "activities" through discovery before moving to amend the complaint).

Defendants. *See, e.g., Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199-200 (S.D.N.Y. 2014). In general, an amendment to a complaint may be unduly prejudicial if it would "(i) require the defendant to expend significant additional resources to conduct discovery, or (ii) significantly delay the resolution of the dispute." *Id.* (citing *Block*, 988 F.2d at 350) (internal quotation marks omitted).

The only purported prejudice that Defendants identify is the possibility that Plaintiffs use this amendment as a basis to reopen certain depositions and/or that Defendants require additional discovery into any alleged policymaking authority of the Putative Defendants. Opp. Br. at 13. The Court is not persuaded. Plaintiffs' counsel has already represented to the Court that, in Plaintiffs' view, no additional discovery will be necessary should the proposed amendments be granted. Dkt. No. 86. And even if certain depositions are reopened or supplemental discovery requests served, the "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *U.S. v. Continental Illinois Nat. Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989).[5] That is especially true where the proposed amendment primarily serves to replace a "John Doe" included in the original pleading with a named defendant. *See, e.g., Bernhard v. Cent. Parking Sys. of N.Y., Inc.*, 282 F.R.D. 284, 291-92 (E.D.N.Y. 2012) (because defendants "were aware of these claims from the outset," any additional discovery necessitated by substitution of named defendant for "John Doe" would "not be extensive" and would likely be limited to "a few" depositions); *Smith v. Metro-North Commuter R.R.*, No. 97-cv-0843, 1998 WL 851602, at *2 (S.D.N.Y. Dec. 8, 1998) ("little

---

[5] *See also Bridgeport Music*, 248 F.R.D. at 414 ("burden on the current defendants of attending reopened depositions" and generally bearing the "costs" of "additional discovery" does not constitute undue prejudice); *Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 123 (E.D.N.Y. 2003) (no undue prejudice where "repetitive depositions may not be necessary" and "even if additional discovery is needed, such discovery would not be extensive"); *cf. State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (leave appropriate where amendment would not involve "a great deal of additional discovery," particularly because relevant individuals had already been deposed).

risk of prejudice" where "defendant clearly knew from the outset that the complaint was directed in part against its individual employees" identified only as 'John Does'").[6]

Defendants have been aware from the outset of this litigation of Plaintiffs' allegations that unidentified senior Port Authority employees made the decision to review PPOs' text messages or at least knew of and condoned the review during the pendency of the Texas Arizona investigation. Comp. ¶ 60. All three Putative Defendants have been deposed, and, based in large measure on those depositions, Plaintiffs have pursued and Defendants have provided certain supplemental discovery concerning their decision-making authority with respect to the PIU's evidence-gathering methods. Dkt. 79-24. Under the circumstances, the Court finds that joinder of the Putative Defendants will not unduly prejudice Defendants.

### 2.    The Amendments Adding the Putative Defendants Are Not Futile

Defendants also argue that the proposed amendments adding the Putative Defendants should be denied as futile. Opp. Br. at 13-15. Specifically, Defendants contend that the proposed amendment complaint does not set forth sufficient factual allegations regarding the "personal involvement" of the Putative Defendants in the text message review for individual claims against Putative Defendants to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

As a general matter, a proposal to amend a complaint may be denied as futile "if the proposed amended complaint would fail to state a claim on which relief could be granted." *Perfect Pearl*, 889 F. Supp. 2d at 459. "The question whether an amendment would be futile is therefore governed by the same standard that applies to whether an already-filed pleading states a

---

[6] *See also Huber v. Nat'l R.R. Passenger Corp.*, No. 10-cv-09348, 2012 WL 6082385, at *7 (S.D.N.Y. Dec. 4, 2012) ("mere identification of a 'John Doe' defendant" usually "does not prejudice a defendant or justify denying leave to amend," particularly if plaintiff "does not wish to add any factual allegations") (internal quotation marks omitted).

claim." *Id.* Under that standard, a complaint "must contain sufficient factual matter to . . . 'state a claim to relief that is *plausible on its face.*'" *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis in original). Importantly, however, while "the standard for futility has been formulated based on a motion to dismiss," if, as here, "the motion to amend is made after discovery, courts have looked to the record in assessing whether the proposed amendment is futile." *Felmine v. City of N.Y.*, 09-cv-3768, 2011 WL 4543268, at *25 n.8 (E.D.N.Y. Sept. 29, 2011) (citing *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 259-60 (2d Cir. 2002)); *cf. Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (recognizing that standard for futility may vary depending on the stage of the litigation). The Court is therefore "not limited to the pleadings in its assessment" of Plaintiffs' amendments. *Felmine*, 2011 WL 4543268, at *25 n.8. The burden to establish futility is on the Defendants. *Ouedraogo v. A-1 Int'l. Courier Serv., Inc.*, 12-cv-5651, 2013 WL 3466810, at *6 (S.D.N.Y. Jul. 8, 2013). Plaintiffs may overcome Defendants' objection by "merely show[ing] that [they have] 'at least colorable grounds for relief,'" *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 256 (S.D.N.Y. 2012) (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984)), and the Court must "draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

The Court concludes that the proposed amendments naming the Putative Defendants would afford Plaintiffs colorable grounds for relief. Plaintiffs' proposed amended complaint alleges that the Putative Defendants, along with McGovern, made the "decision to search the [PPOs'] private cell phones," and/or "knew about the illegal searches" as they were being

16

conducted and "condoned their ongoing implementation." Dkt. No. 79-1 ¶ 61.  Moreover,

discovery has provided ample factual support for, if nothing else, the latter allegation.  *See*

*Hangzhou Kailai Neckwear Apparel Co. Ltd. v. NCP Direct Sourcing, Inc.*, 15-cv-1441, 2016

WL 4400306, at *2 (S.D.N.Y. Aug. 17, 2016) (if the motion to amend is made after discovery,

court may look to the record when assessing a futility challenge) (citing *Felmine*, 2011 WL

4543268, at *25 n.8).  As discussed above, Connelly and Pasichow testified at deposition that all

three Putative Defendants were briefed on the text message reviews during the earliest stages of

the PPO interview process and that lead investigator McGovern received no order to cease the

reviews or to alter the PIU's approach to obtaining access to PPOs' text messages.  *See supra*

II.C.  Further, while briefing on Plaintiffs' motion was ongoing, McGovern testified: that he

discussed the plan to review the PPOs' messages – a "significant development" in the

investigation – with Connelly, Pasichow, and Nestor soon after it was formulated; that there were

"close lines of communication on a regular basis" among the group concerning the ongoing

investigation; that Connelly in particular "may have . . . granted" affirmative approval of the text

message review; and that none of the Putative Defendants told McGovern to stop the reviews.

McGovern Dep. at 231-32, 250-53.  Assuming *arguendo* that the text message reviews violated

the Fourth Amendment, Plaintiffs have at least colorable grounds to attach supervisory liability

to the Putative Defendants under the applicable standard described above.  *See supra* II.C; *see*

*also Pagan v. Westchester Cty.*, 12-cv-7669, 2014 WL 982876, at *22 (S.D.N.Y. Mar. 12, 2014)

(denying motion to dismiss § 1983 claim against supervisory defendant where plaintiffs alleged

that defendant had regular meetings with senior staff during which he was made aware of, but

ignored, ongoing Eighth Amendment violations); *Hines City of Albany*, 542 F. Supp. 2d 218,

230-31 (N.D.N.Y. 2008) (amended § 1983 claim against individual police chief not futile where

plaintiff alleged that chief "created the policies under which the Officers acted, and that he failed to remedy the alleged violations after being informed of them").

Defendants' reliance on Judge Buchwald's decision in *Bogart v. City of New York* is misplaced. In *Bogart*, the plaintiff sought to join the then-Mayor, Deputy Mayor, and Corporation Counsel of New York City to a § 1983 action predicated in pertinent part on an individual police officer's alleged decision to punch the plaintiff after she made disapproving comments about the police during the Occupy Wall Street protests in Zuccotti Park. 13-cv-1017, 2015 WL 5036963, at *1-2 (S.D.N.Y. Aug. 26, 2015). As is relevant here, while recognizing that supervisory liability may in general attach for, among other things, knowing failure to remedy a constitutional violation, the court deemed the proposed amendment futile because the plaintiff failed to plead or otherwise identify any factual support for the City officials' personal involvement in the police officer's decision to deliver the punch. *Bogart*, 2015 WL 5036963, *5 & n.7. Here, by contrast, Plaintiffs have alleged that the Putative Defendants "knew about the illegal searches" as they were being conducted and "condoned their ongoing implementation." They have marshalled substantial evidence that the Putative Defendants were made aware of the alleged constitutional violations as they were ongoing and declined to stop them. In light of the allegations and the record evidence, the Court cannot accept Defendants' argument that Plaintiffs' proposed amendments concerning the Putative Defendants are rendered futile by inadequate factual support.

### D. Plaintiffs Fail to Show Good Cause for Adding a Claim Under the New Jersey Constitution

Plaintiffs also seek leave to add a claim that the text message reviews violated Article I, Paragraph 7 of the New Jersey Constitution, the state analog to the Fourth Amendment. Br. at 17-18. For the following reasons, the Court finds that Plaintiffs do not show the requisite good

cause for this amendment under Rule 16(b) and, accordingly, denies this portion of Plaintiffs'
motion.

Like the amendment concerning the Putative Plaintiffs, this proposed amendment "rests
on information that [Plaintiffs] knew, or should have known, in advance of the deadline."
*Perfect Pearl*, 889 F. Supp. 2d at 457 (internal quotation marks omitted).  As Plaintiffs concede
in their moving papers, the proposed "New Jersey Constitution claim is nearly identical to
Plaintiffs' previously-pled Fourth Amendment claim" and "arises out of the same facts pled in
the initial complaint."  Br. at 23.  Indeed, in their notice of claim, submitted to Defendants
approximately five days before the currently operative complaint was filed, Plaintiffs expressly
identified a claim under Article I, Paragraph 7 of the New Jersey Constitution in addition to
claims under the Fourth Amendment and the New York Constitution.  *See* Dkt. No. 80-15.
Plaintiffs provide no explanation as to why the state constitutional claims were excluded from
the complaint filed the following week, and the Court can only conclude that Plaintiffs made a
strategic decision to proceed solely with their federal claim under § 1983.

Attempting to avoid this conclusion, Plaintiffs argue that there is "an important
distinction" between the proposed state constitutional claim and the original Fourth Amendment
claim such that matters that purportedly "became apparent during discovery" justify belatedly
amending the complaint.  Specifically, Plaintiffs note that the New Jersey Constitution has been
construed to provide greater protection for criminal defendants than the Fourth Amendment if
the state seeks to justify a search on the grounds of consent, placing the burden on the state to
"show[] that the consent was voluntary, an essential element of which is knowledge of the right
to refuse consent."  *See* Br. at 18 (citing *State v. Johnson*, 68 N.J. 349, 353-54 (N.J. 1975)).
Because, Plaintiffs assert, it did not "bec[ome] clear" until "discovery evolved" that "Defendants

19

never informed PPOs of their right to refuse to consent to the searches" or that the PPOs "were unaware of this right," leave to add the new claim, and thereby invoke the New Jersey Constitution's heighted protection, is warranted.  Br. at 18-19; Reply Br. at 8-9.

Assuming *arguendo* that Plaintiffs are correct that *Johnson* and its progeny apply with equal force to civil claims for violations of the New Jersey Constitution's search and seizure provisions, Plaintiffs' argument fails for at least two reasons.  First, even if Plaintiffs did not obtain information that could help to neutralize one potential defense to a New Jersey search-and-seizure claim until discovery, it does not follow that Plaintiffs necessarily lacked sufficient information to nevertheless assert the *prima facie* claim prior to the deadline to amend.  Indeed, that is amply demonstrated by the fact that Plaintiffs evidently thought themselves in possession of a sufficient factual basis to assert a Fourth Amendment claim from the outset of this action, notwithstanding the lesser hurdles facing a consent defense under federal law.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973) (under the federal Constitution, "[v]oluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution *is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent*") (emphasis added).

Perhaps more importantly, Plaintiffs' position that they learned only through discovery that the PPOs were purportedly uninformed and unaware of their right to refuse the text message reviews is not credible.  To the contrary, it is belied by the allegations set forth in the original complaint, by Plaintiffs' evident access to multiple PPOs during the complaint-drafting process, and by Defendants' pre-deadline production of transcripts and audio recordings of the Port Authority's PPO interviews.

The currently operative complaint, for example, specifically alleges that the Defendants conducting the interviews "did not inform the [PPOs] that they could refuse to answer any questions, end the questioning, or seek counsel for representation during the questioning." Comp. ¶ 29. It further asserts that, "[w]hen they demanded to search the phones, the Interrogating Defendants made it clear to the [PPOs] that they had no choice but to comply. Like their obligation to answer other questions, the [PPOs] understood that the only alternative to submission to a search was termination." *Id.* ¶ 41. Moreover, as discussed above, the operative complaint sets forth the alleged circumstances of the reviews of several individual PPOs' text messages, consistently asserting that the purported searches were "ordered," "forced," "demanded," "instructed" or "directed," and that PPOs were "afraid" of losing their jobs if they "did not comply." *See id.* ¶¶ 46-56. It is evident to the Court that these allegations are based on conversations or other disclosures by the PPOs themselves, and indeed the parties have directed the Court's attention to portions of the discovery record that appear to confirm that Plaintiffs' counsel had access to at least three alleged search victims before the complaint was filed (Howard, Doscher, and Bordonaro). The record also reflects that Defendants produced transcripts and audio recordings of several PPO interviews approximately ten days in advance of the deadline to amend. *See* Dkt. No. 80-5. Plaintiffs acknowledge that these documents, at the very least, do not reflect on-the-record delivery of any express advisories to the PPOs concerning any right to refuse the text message reviews. Reply Br. at 9.

Taken together, these facts leave the Court unable to conclude that the Plaintiffs could not, with the exercise of diligence, have learned of the PPOs' asserted unawareness of their right to refuse prior to the amendment deadline or, in any event, substantially earlier than Plaintiffs' application to amend was first filed. Accordingly, Plaintiffs fail to demonstrate good cause to

add the proposed New Jersey constitutional claim. *See, e.g.*, *Parker*, 204 F.3d at 340-41 (good

cause to amend absent where plaintiff "had all the information necessary to support" his

proposed additional claim "[w]hen he commenced th[e] action" and "nothing he learned in

discovery or otherwise altered that fact"); *Motorola Solutions, Inc. v. Xerox Bus. Servs. LLC*, 14-

cv-206, 2016 WL 2889057, at *4-5 (S.D.N.Y. May 17, 2016) (denying leave to add ERISA

claim which would be based "primarily, if not wholly," on documents in plaintiff's possession

when it commenced original breach of contract claim).

Considerations of potential prejudice, while not strictly necessary to the Court's Rule

16(b) analysis, further support denial of Plaintiffs' proposed amendment. Defendants have

litigated this matter for over a year – and completed all discovery – with no reason to believe that

any consent-based defense that they might mount would have to satisfy the more stringent

requirements of the New Jersey Constitution. *See McCarthy*, 482 F. 3d at 201 ("A complaint

provides a defendant with notice of what the plaintiff's claim is and the grounds upon which it

rests. Having received such notice, a defendant may conduct his trial preparation accordingly

and is not required, based on the plaintiff's subsequent conduct in litigation, to anticipate future

claims that a plaintiff might intend to pursue.") (internal quotation marks and citations omitted).

While there is no doubt that the facts underlying Plaintiffs' federal and state constitutional claims

are overwhelmingly similar, the higher legal bar to establishing consent under New Jersey law is,

as Plaintiffs readily acknowledge, an "important distinction," Br. at 18, one that could well affect

a defendant's litigation strategy or approach to discovery. *Cf. Sanders v. Thrall Car Mfg. Co.*,

582 F. Supp. 945, 951-53 (S.D.N.Y. 1983) (no leave to assert new RICO claim even though

based on "identical facts" as previously pled claims). Indeed, Defendants here contend that

should the Court permit this amendment, they would, with discovery concluded, be deprived of a

full opportunity to build up the record on the PPOs' awareness of their right to refuse with the knowledge that they would ultimately bear the burden on this point.[7] Opp. at 16. The Court is persuaded that such a deprivation could indeed be prejudicial.

For the foregoing reasons, leave to amend the complaint to add the New Jersey constitutional claim is unwarranted.[8]

### E.      Request for Declaratory Relief

Finally, Plaintiffs seek to amend their prayer for relief to include an explicit request for a declaration that the Port Authority's purported "cell phone search policy is unlawful." Br. at 2. Defendants do not specifically challenge this proposed amendment, and the Court deems it unopposed. *See e.g.*, *Tardif v. City of N.Y.*, 13-cv-4056, 2015 WL 9257069, at *7 (S.D.N.Y. Dec. 7, 2015); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 01-cv-11295, 2003 WL 21056809, at *4 (S.D.N.Y. May 8, 2003).

In the absence of objection from Defendants, the Court credits Plaintiffs' assertions that the proposed amendment – which does not include any changes to factual allegations or parties – will "remov[e] any ambiguity" from and "clarify[y] the relief sought" in the original complaint. Br. at 1, 23. The Court therefore grants Plaintiffs' application to add a request for a declaration that the Port Authority's alleged search policy violates the Fourth Amendment. Because,

---

[7] While submitted portions of the discovery record reflect that defense counsel did address – if frequently in passing – certain issues bearing on awareness of the right to refuse during the depositions of certain PPOs, *see* Reply Br. at 10, the Court is ill-positioned to make a determination that Defendants would not have focused more zealously on such issues during discovery in a counterfactual scenario in which they were aware that a consent defense would face the higher hurdles supplied by New Jersey law.

[8] This Court's decision in *Ouedraogo* is not to the contrary. There, the Court granted leave to amend, including to assert new state common law claims, based on newly obtained evidence and the recent identification of a previously unknown plaintiff while the case was "still in the early stages of litigation and all discovery deadlines ha[d] been extended." 2013 WL 3466810, at *5.

however, the Court has already determined that the Plaintiffs' proposal to add a state

constitutional claim lacks good cause and would potentially prejudice Defendants, it denies any

corresponding application by Plaintiffs to add a request for declaratory relief under New Jersey

law.

## III.   Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for leave to amend as it

concerns the addition of the Putative Defendants and the request for declaratory relief under

§ 1983, and otherwise DENIES the motion.  Plaintiffs shall file an amended complaint within

seven days of this order.  No later than seven days after the filing of the amended complaint, the

parties shall inform the Court whether any party intends to file a motion for summary judgment

and, if so, submit a proposed a briefing schedule.

This resolves Dkt. No. 77.


SO ORDERED.

Dated: ~~September~~ Oct 17, 2016
       New York, New York

_____
ALISON J. NATHAN
United States District Judge